UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHIRLEY MIMS,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

Civil Action No. 14-30078-MGM

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER
(Dkt. Nos. 15 and 20)

June 22, 2015

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

This is an action for judicial review of a final decision by Carolyn Colvin, the Acting Commissioner of the Social Security Administration ("Commissioner"), regarding an individual's entitlement to Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1383(c)(3) (referencing 42 U.S.C. § 405(g)). Shirley Mims ("Plaintiff") asserts the Commissioner's decision denying her such benefits—memorialized in a May 23, 2013 decision of an administrative law judge ("ALJ")—is in error. She has filed a motion to reverse the judgment and the Commissioner has moved to affirm.

For the following reasons, the court will deny Plaintiff's motion (Dkt. No. 15) and will allow the Commissioner's motion to affirm (Dkt. No. 20).

## II. BACKGROUND

Plaintiff was born on October 29, 1957. (Administrative Record ("A.R.") at 14.) She has a high school education, some college education, and her past employment includes work as a certified nurse's aide. (Id. at 17, 35-36.) She has a history of mental disorders including depression, psychosis, and post-traumatic stress disorder. (Id. at 14, 384.) Plaintiff was 53 years old when she applied for SSI on July 6, 2011. (Id. at 12, 157.) Plaintiff claimed she was disabled beginning September 5, 2007 due to rheumatoid arthritis, brain damage, and depression. (Id. at 17, 184.)

After Plaintiff's application was denied both initially and upon reconsideration, she requested a hearing in front of an ALJ. (Id. at 7, 12.) The hearing took place on May 6, 2013, at which both Plaintiff and vocational expert ("VE") Erin Bailey testified. (Id. at 27-66.) Plaintiff testified she spent most of her time looking for work, wanted to have a job, and could work full-time as a janitor if it paid enough "to keep a roof over [her] head." (Id. at 43-44, 46-48.) Plaintiff also testified she cooks, cleans, dresses, and feeds herself, and attends church and drug meetings multiple times a week. (Id. at 52, 54.) In response to a hypothetical question posed by the ALJ, the VE testified that an individual with Plaintiff's age, education, and past work history—who was also limited to remembering and carrying out only simply instructions and had only occasional contact with other people—could perform work as a janitor. (Id. at 65.) The VE also testified that the position of janitor entails no more than occasional contact with others. (Id. at 66.) The ALJ issued a decision on May 23, 2013, finding Plaintiff was not disabled from July 6, 2011 through the date of that decision. (Id. at 9, 21.) Thereafter, Plaintiff filed the instant action, the Commissioner compiled the administrative record, and the parties submitted the cross-motions presently at issue.

### III.   STANDARD OF REVIEW

The role of a district court reviewing an administrative law judge's decision is limited to determining whether the conclusion was supported by substantial evidence and based on the correct legal standard.  See 42 U.S.C. § 1381(1)(3); Manso-Pizzarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).  Substantial evidence means "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (citations omitted).  Additionally, it is the Commissioner's responsibility to weigh conflicting evidence and decide issues of credibility.  Id.

### IV.   DISABILITY STANDARD AND THE ALJ'S DECISION

Entitlement to SSI requires a showing of both disability and financial need on or after the date of the SSI application.  See 42 U.S.C. § 1381a.  Here, Plaintiff's financial need is not challenged.

The Social Security Act (the "Act") defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  An individual is considered disabled under the Act,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  See generally Bowen v. Yuckert, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. § 416.920(a)(4).

In the instant case, the ALJ found as follows with respect to these steps. First, Plaintiff has not engaged in substantial gainful activity since July 6, 2011, the application date, through the ALJ's decision on May 23, 2013. (A.R. at 14.) Second, the ALJ found Plaintiff has severe impairments, in particular, mood disorder, psychosis, cognitive disorder, post-traumatic stress disorder, depression, and dysexecutive syndrome. (Id. at 14.) Third, the ALJ determined Plaintiff's impairments did not, singly or in combination, meet or medically equal the severity of one of the listed impairments listed in 20 C.F.R. Part 404, Subpart 1, Appendix 1. (Id. at 15.) Fourth, the ALJ found Plaintiff had the RFC to perform a full range of work as long as she only has to follow simple instructions and was limited to occasional interaction with others. (Id. at 16.) The ALJ determined, in light of this RFC, Plaintiff could engage in work as a janitor, which is a job that exists in significant numbers in the national economy. (Id. at 17, 20.) As a result, the ALJ determined Plaintiff was not disabled. (Id. at 21.)

## V.  ANALYSIS

Plaintiff asserts the ALJ did not give proper weight to the medical opinions of Patricia Webber, MS APRN, Michelle Gordon, LMHC, and Dr. Mark Elin, Ph. D., when determining her RFC. Plaintiff also asserts the ALJ failed to sustain his burden of establishing there is work in the

4

national economy that Plaintiff can perform based on her RFC.  In response, the Commissioner argues substantial evidence in the record supports the ALJ's findings.

A.  <u>Opinions of Ms. Gordon, Ms. Webber, and Dr. Elin.</u>

Plaintiff argues the ALJ erred by not including the psychological impairments determined by Dr. Elin, Ms. Webber, and Ms. Gordon in her RFC.  The Commissioner, for her part, argues the ALJ properly weighed these opinions and substantial evidence supports the ALJ's RFC finding.  The Commissioner has the better argument.

Plaintiff at times refers to Ms. Gordon, a licensed mental health counselor, as a "treating physician."  Ms. Gordon's opinion was, however, not entitled to controlling weight because she cannot be considered a "treating source."  An administrative law judge must give controlling weight to the opinion of a "treating source" when that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record. <u>See</u> 20 C.F.R. § 416.927(c)(2).  Because licensed mental health counselors are not among the "acceptable medical sources" listed in 20 C.F.R. § 416.913(a), they are not treating sources and, thus, are not entitled to controlling weight.  <u>See</u> <u>Randall v. Astrue</u>, 2011 WL 2649967, at *1 (D. Mass July 5, 2011).  Nor are the opinions of Ms. Webber or Dr. Elin entitled to controlling weight.  Ms. Webber, an advanced practice registered nurse, is also not an acceptable medical source.  <u>See</u> 20 C.F.R. § 416.913(a).  Although Dr. Elin is an acceptable medical source, he does not qualify as a "treating source" because he evaluated Plaintiff only once on June 26, 2012. (A.R. at 750.)  <u>See</u> 20 C.F.R. § 416.902 (defining "treating source" as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you").

5

The ALJ had an adequate basis for, and provided an adequate explanation of, the weight assigned to these "other medical sources." Ms. Gordon examined Plaintiff and filled out a checklist detailing her impairments on April 23, 2013. (A.R. at 19, 756-57.) The ALJ properly accorded "some consideration" to Ms. Gordon's report because her checklist "contain[ed] little more than brief conclusory statements or the mere checking of boxes denoting levels of residual functional capacity." Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991). The ALJ also noted Ms. Gordon's report, which identified "no useful ability to function" in multiple areas, is inconsistent with Plaintiff's ability to independently carry out activities of daily living and her acknowledgment at the hearing that she can work. (A.R. at 43-44, 46-48.) Moreover, the ALJ gave Ms. Webber's report "moderate weight" because of her "overall knowledge of the case." (Id. at 19.) The court, however, agrees with the Commissioner that the ALJ was not required to defer to Ms. Webber's opinion that Plaintiff could not work. See SSR 96-5p, available at 1996 WL 374183, at *2 ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's responsibility to determine whether an individual is disabled."); see also Foley v. Astrue, 2010 WL 2507773, at *8 (D. Mass. June 17, 2010) ("[T]he opinion of a treating physician that a claimant is unable to work is entitled to no deference at all (as it is not a medical opinion)."). Lastly, the ALJ gave Dr. Elin's report "moderate weight" because of his "level of training" and actually adopted his diagnoses as severe impairments. (A.R. at 14-15, 18-19, 753.)

Substantial evidence supports the ALJ's ultimate RFC finding. When reviewing an ALJ's determination, the relevant question is not whether evidence in the record can support another conclusion, but whether the ALJ's conclusion is supported by substantial evidence in the record.

See Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Rodriguez, 647 F.2d at 222. Here, the ALJ concluded that although Plaintiff suffered from severe anxiety and depression, she retained the mental RFC to perform "a full range of work" provided she is limited to "only simple instructions" and "occasional contact with others." (A.R. at 16.) This RFC, the ALJ concluded, is consistent with Plaintiff's ability to manage a wide range of activities of daily living, including cooking and cleaning for herself, as well as attending church daily and drug meetings twice a week. (Id. at 17.) See Colon v. Chater, 1998 WL 1085796, at *1 (1st Cir. Sept. 30, 1998) (affirming the denial of benefits, and emphasizing plaintiff cared for her children and could do some household cleaning); Garcia v. Secretary of Health and Human Services, 1994 WL 235328, at *3 (1st Cir. June 1, 1994) (affirming the denial of benefits, and emphasizing "claimant's daily activities included rising early, eating breakfast, cooking, washing, caring for her personal hygiene, and going out."). Most importantly, Plaintiff repeatedly acknowledged she spent most of her time looking for work, wanted to have a job, and could work full-time as a janitor.[1] (A.R. at 43-44, 46-48.) See Workman v. Comm'r of Soc. Sec., 2004 WL 1745782, at *7 (6th Cir. July 29, 2004) (finding there is "no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [she] is ready and willing to work.").

The ALJ's decision was also supported by Plaintiff's treatment records. (Id. at 14, 17-18.) For example, on December 13, 2007, Plaintiff was examined by Dr. Leon Hutt. (Id. at 263-266.) Dr. Hutt's mental status examination determined Plaintiff was fully alert, her speech was relevant and coherent, and her attentional capacity was mildly impaired. (Id.) In May 2011, Dr. Douglas

---

[1] During the hearing, Plaintiff backtracked at one point regarding her ability to work full time. In response to a question from her representative, she testified "I don't think I could do full-time. Maybe part time." (A.R. at 48.) Given Plaintiff's other testimony and the record as a whole, however, the ALJ was entitled to disregard that statement. Rodriguez, 647 F.2d at 222.

7

Williams examined the Plaintiff and reported she could "complete simple reading and writing activities…[and] follow 3-step instructions." (Id. at 383.) The results of Dr. Williams' mental status exam determined Plaintiff's "general cognitive abilities [were] within normal expectations." (Id.)

B. Vocational expert testimony.

Plaintiff next argues the ALJ erred in relying on the testimony of the VE to find Plaintiff was capable of performing work existing in significant numbers in the national economy. Specifically, Plaintiff argues the hypothetical posed to the VE regarding the number of janitor positions available at night and the Dictionary of Occupational Titles ("DOT") demonstrate a janitor job is inconsistent with Plaintiff's RFC.

Contrary to Plaintiff's assertion, the janitor position identified by the VE is consistent with Plaintiff's RFC because it requires merely "occasional contact with others." (A.R. at 16.) This is demonstrated by the DOT, which states a janitor's interaction with others is "[n]ot [s]ignificant." DOT § 381.687-018, available at 1991 WL 673258; see also Connor v. Colvin, 2014 WL 3533466, at *4 (D. Me. July 16, 2014) (finding interactions that are "occasional, brief, and superficial…with coworkers and supervisors…[or] with the public" are consistent with the DOT rating of a cleaner); Hatt v. Social Sec. Admin. Com'r, 2014 WL 4411600, at *1 (D. Me. Sept. 5, 2014) (affirming denial of benefits because claimant retains the RFC to perform unskilled work with limited public contact, and therefore can continue to perform work as a cleaner). Moreover, this position, which is assigned a "reasoning level" of two by the DOT, does not exceed Plaintiff's RFC limitation of "remember[ing] and carry[ing] out only simple instructions." (A.R. at at 16.) See DOT § 381.687-018, available at 1991 WL 673258; Hargrow v. Colvin, 2014 WL 1153782, at *16 (D. Mass. March 19, 2014) (providing support from other circuit courts that have determined a restriction to "simple" tasks would not preclude an individual from performing jobs with a reasoning level of two or three). Lastly, the VE's testimony regarding janitor positions at night, which was in response to a

hypothetical question posed by Plaintiff's representative at the hearing, does not change the outcome of this case. Plaintiff has not demonstrated she has a disability that limits her to only working at night.

## VI. CONCLUSION

For these reasons, the court DENIES Plaintiff's Motion for Order Reversing the Commissioner's Decision (Dkt. No. 15) and ALLOWS the Commissioner's Motion to Affirm the Commissioner's Decision (Dkt. No. 20). The clerk shall enter judgment for Defendant, and this case may now be closed.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge